UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN DOE, in his individual
capacity and as the legal
guardian of DOE CHILD, ROE-ONE
CHILD and ROE-TWO CHILD, and
JANE ROE, in her individual
capacity,

           Plaintiffs,

    v.                          NO. CIV. S-06-1043 LKK/DAD

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA, a California government
corporation dba the CAARE DIAGNOSTIC
AND TREATMENT CENTER of the U.C.
DAVIS HEALTH SYSTEM AND MEDICAL CENTER;    **O R D E R**
KEVIN PATRIC COULTER, M.D.;
SHERIDAN MYAMOTO, R.N.; COUNTY OF
SACRAMENTO; SACRAMENTO COUNTY
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; CHILD PROTECTIVE SERVICES
AGENCY OF SACRAMENTO COUNTY; and
SYLVIA LOPEZ,

           Defendants.
_____/

      Plaintiffs, Doe-Child, Roe-One Child, Roe-Two Child and

their parents, John Doe and Jane Roe, (collectively "plaintiffs"),

bring suit against defendants for alleged violations of their civil

rights.   Defendants include the Regents of the University of

California ("UC Regents"), Kevin Patrick Coulter, M.D. ("Coulter"),

1

Sheridan Miyamoto, R.N. ("Miyamoto")[1], the County of Sacramento, Sacramento County Department of Health and Human Services ("DHHS"), Child Protective Services Agency of Sacramento County ("CPS"), and Sylvia Lopez.

Plaintiffs plead the following causes of action: (1) 42 U.S.C. § 1983 (violations of civil rights); (2) 42 U.S.C. § 1985(conspiracy to interfere with civil rights); (3) 42 U.S.C. § 1986(neglect to prevent interference with civil rights); (4) assault and battery; and (5) invasion of privacy.  FAC at ¶ 26-65.[2] Pending before the court are motions to dismiss and to strike filed by defendants UC Regents, Coulter, and Miyamoto.

## I.

## ALLEGATIONS OF THE COMPLAINT AS AMENDED

On May 11, 2004, defendant CPS removed plaintiffs Roe-One Child, Roe-Two Child and Doe Child from their home and placed them into protective custody.  The removal took place after a school teacher contacted CPS when she observed bruising on Roe-One Child and Roe-Two Child.  First Amended Complaint ("FAC") at ¶ 15. Because Doe Child lived at the same home as Roe-One Child and Roe-Two Child, he was also taken into custody.  Id.  Plaintiffs

---

[1] In their complaint, plaintiffs refer to Sheridan Miyamoto as "Myamoto," but based on defendants' papers, it appears that "Mymoto" is the incorrect spelling.  The court will utilize the correct spelling of defendant's name in its order.

[2] Plaintiffs pray for the following relief: $965,000 in compensatory damages, $5,000,000 in punitive damages, injunctive and declaratory relief, and attorneys' fees.  Prayer for Relief at ¶¶ 1-8; id. ¶ 67.

1   maintain that as part of CPS' regular procedure for taking possible

2   victims of abuse into protective custody, CPS workers transported

3   the children to CAARE Diagnostic and Treatment Center ("CAARE") at

4   the University of California, Davis Medical Center in Sacramento.[3]

5   FAC ¶ 16.  There, plaintiffs allege that defendant Miyamoto, under

6   the supervision and control of defendant Coulter, conducted

7   invasive genital examinations of Roe-One Child and Roe-Two Child

8   "without probable cause to do so."  Id.  According to plaintiffs,

9   there was no evidence to suggest that Roe-One or Roe-Two had ever

10  been subject to any kind of sexual abuse.  Also, the minors

11  consistently denied that anyone had ever touched their genitals or

12  abused them sexually.  Id.  Plaintiffs allege that as a result of

13  the examinations, Roe-One and Roe-Two each suffered embarrassment,

14  physical discomfort that lasted several days, and severe emotional

15  distress.  Id. at ¶ 17.

16      As a consequence of CPS' investigation, a juvenile dependency

17  hearing was instituted.   FAC at ¶ 18.  Miyamoto testified that it

18  was her custom and practice to subject every minor child referred

19  to her by CPS to strip searches and genital examinations,

20  regardless of whether there was probable cause to believe sexual

21  abuse had occurred.  Id.  On October 26, 2004, after a month-long

22  trial involving multiple medical experts, a Sacramento County Court

23  dismissed the petition that had been brought by defendants pursuant

24  to California Welfare and Institutions Code § 300, finding that

25  _____

26      [3] CAARE is a subsidiary of defendant US Regents.  FAC at ¶

1   there was no evidence that the minors had been subjected to any

2   kind of sexual or physical abuse.  Id. at ¶ 19.

3        As a result of the removal of the children for almost six

4   months, plaintiffs complain of emotional distress as well as loss

5   of companionship and emotional support.  FAC at ¶¶ 20-21.

6   Plaintiffs also claim there are other minor children and parents

7   who have been harmed by defendants, and that a class action law

8   suit might be appropriate.  Id. ¶ 13.

9                                **II.**

10                            **STANDARDS**

11   **A. DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(1)**

12        It is well-established that the party seeking to invoke the

13   jurisdiction of the federal court has the burden of establishing

14   that jurisdiction exists.  KVOS, Inc. v. Associated Press, 299 U.S.

15   269, 278 (1936); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.

16   1986).  On a motion to dismiss pursuant to Federal Rule of Civil

17   Procedure 12(b)(1), the standards that must be applied vary

18   according to the nature of the jurisdictional challenge.

19        If the challenge to jurisdiction is a facial attack, i.e., the

20   defendant contends that the allegations of jurisdiction contained

21   in the complaint are insufficient on their face to demonstrate the

22   existence of jurisdiction, the plaintiff is entitled to safeguards

23   similar to those applicable when a Rule 12(b)(6) motion is made.

24   The factual allegations of the complaint are presumed to be true,

25   and the motion is granted only if the plaintiff fails to allege an

26   element necessary for subject matter jurisdiction.  See 2A J.

1  Moore, J. Lucas & G. Grotheer, <u>Moore's Federal Practice</u>, ¶ 12.07

2  (2d ed. 1987); <u>see also</u> <u>Eaton v. Dorchester Development, Inc.</u>, 692

3  F.2d 727, 731 (11th Cir. 1982); <u>Williamson v. Tucker</u>, 645 F.2d 404,

4  412 (5th Cir. 1981), <u>cert. denied</u>, 454 U.S. 897 (1981); <u>Mortensen</u>

5  <u>v. First Fed. Sav. & Loan Ass'n.</u>, 549 F.2d 884, 891 (3d Cir. 1977).

6  A  complaint  will  be  dismissed  for  lack  of  subject  matter

7  jurisdiction (1) if the case does not "arise under" any federal law

8  or the United States Constitution, (2) if there is no case or

9  controversy within the meaning of that constitutional term, or (3)

10 if the cause is not one described by any jurisdictional statute.

11 <u>Baker v. Carr</u>, 369 U.S. 186, 198 (1962).

12      The Eleventh Amendment is a limitation on a federal court's

13 subject matter jurisdiction in the sense that it limits the federal

14 court's power to hear cases when properly asserted and as such can

15 be raised for the first time on appeal.  <u>Edelman v. Jordan</u>, 415

16 U.S. 651, 678 (1974). But unlike other jurisdictional bars it need

17 not be addressed by the court *sua sponte* and can be waived or

18 forfeited by the state.  <u>Patsy v. Board of Regents of the State of</u>

19 <u>Florida</u>, 457 U.S. 496, 516 n. 19(1982).

20      Accordingly, the Eleventh Amendment has been found "not [to]

21 implicate a federal court's subject matter jurisdiction in any

22 ordinary sense" and is generally treated as an affirmative defense.

23 <u>ITSI T.V. Productions v. Agricultural Associations</u>, 3 F.3d 1289,

24 1291 (9th Cir. 1993).  As with other affirmative defenses, the

25 burden is on the party asserting it and receiving its benefits -

26 in the Eleventh Amendment context, the public entity - to

1  demonstrate its entitlement to sovereign immunity in federal court.

2  Id. at 1292.

3  **B. DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)**

4       On a motion to dismiss, the allegations of the complaint must

5  be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

6  The court is bound to give the plaintiff the benefit of every

7  reasonable inference to be drawn from the "well-pleaded"

8  allegations of the complaint.  See Retail Clerks Intern. Ass'n,

9  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

10  Thus, the plaintiff need not necessarily plead a particular fact

11  if that fact is a reasonable inference from facts properly alleged.

12  See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

13  (inferring fact from allegations of complaint).

14       In general, the complaint is construed favorably to the

15  pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  So

16  construed, the court may not dismiss the complaint for failure to

17  state a claim unless it appears beyond doubt that the plaintiff can

18  prove no set of facts in support of the claim which would entitle

19  him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69,

20  73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

21  In spite of the deference the court is bound to pay to the

22  plaintiff's allegations, however, it is not proper for the court

23  to assume that "the [plaintiff] can prove facts which [he or she]

24  has not alleged, or that the defendants have violated the . . .

25  laws in ways that have not been alleged."  Associated General

26  Contractors of California, Inc. v. California State Council of

1 <u>Carpenters</u>, 459 U.S. 519, 526 (1983).

2 **C. <u>MOTION TO STRIKE STANDARD UNDER FED. R. CIV. P. 12(F)</u>**

3 　　Rule 12(f) authorizes the court to order stricken from any

4 pleading "any redundant, immaterial, impertinent, or scandalous

5 matter."  A party may bring on a motion to strike within 20 days

6 after the filing of the pleading under attack.  The court, however,

7 may make appropriate orders to strike under the rule at any time

8 on its own initiative.  Thus, the court may consider and grant an

9 untimely motion to strike where it seems proper to do so.  <u>See</u> 5A

10 Wright and Miller, <u>Federal Practice and Procedure</u>: Civil 2d § 1380.

11 　　Motions to strike are generally viewed with disfavor, and will

12 usually be denied unless the allegations in the pleading have no

13 possible relation to the controversy, and may cause prejudice to

14 one of the parties. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice</u>

15 <u>and Procedure</u>: Civil 2d § 1380;  <u>See</u> <u>also</u> <u>Hanna v. Lane</u>, 610 F.

16 Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to

17 whether the challenged matter may raise an issue of fact or law,

18 the motion to strike should be denied, leaving an assessment of the

19 sufficiency of the allegations for adjudication on the merits.

20 <u>See</u> 5A Wright & Miller, <u>supra</u>, at § 1380.

21 **III.**

22 **ANALYSIS**

23 　　Defendants maintain that the suit should be dismissed as to

24 the UC Regents, Coulter, and Miyamoto.  Below, I explain why

25 dismissal must be granted as to the UC Regents, denied as to

26 Coulter, and granted in part as to Miyamoto.

7

**A. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (UC REGENTS)**

Defendants contend that the complaint must be dismissed as to the UC Regents because as an "arm" of the state of California, the Eleventh Amendment of the U.S. Constitution prohibits it from being sued in federal court. Mot. at 4-5. Defendants' argument is well-taken, and plaintiffs concede that the UC Regents are immune from suit under the Eleventh Amendment.[4] Opp'n at 6.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment prevents a state from being sued in federal court by its own citizens or the citizens of another state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." Regents of the Univ. of Cal. v.

_____

[4] The Ninth Circuit has made clear that "[t]he University of California and the Board of Regents are considered to be instrumentalities of the state," and therefore, enjoy the same immunity as the state of California. See Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982) See also Thompson v. City of Los Angeles, 885 F.2d 1439, 1442 (9th Cir. 1989)(UC Regents are "a state instrumentality for Eleventh Amendment purposes" and cannot be sued under § 1983). There are two circumstances under which the Eleventh Amendment does not bar an action for damages against a State, but neither apply in the instant case.

8

<u>Doe</u>, 519 U.S. 425, 429 (1997) (quoting <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464 (1945)).

Accordingly, because the UC Regents are immune from suit under the Eleventh Amendment, defendants' motion to dismiss for lack of subject matter jurisdiction must be GRANTED.[5]

**B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (COULTER AND MIYAMOTO)**

Defendants contend that the complaint should be dismissed for failure to state a claim as to Coulter and Miyamoto.[6]   I address the parties' contentions below.

**      a. Defendant Coulter**

---

[5] Defendants additionally contend that claims one, two and three, alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986, can not be asserted against the UC Regents because the Regents are not a "person" for the purposes of the Civil Rights Act.  Mot. at 4-5. Defendants also maintain that claims four and five, alleging assault, battery, and invasion of privacy, should be dismissed against the UC Regents because under California Government Code § 815.2(b), a public entity is not liable for injuries resulting from an immune employee's conduct.  Mot. at 10-11.  Because this court lacks subject matter jurisdiction as to the UC Regents, the court need not address these contentions.

[6] The court notes that plaintiffs' § 1983, 1985, and 1986 claims against Coulter and Miyamoto would founder on the "causation" requirement if plaintiffs merely alleged that defendants were liable for damages resulting from the actual removal of plaintiffs.  Liability under section 1983 requires defendants' actions be the proximate cause, not merely the cause-in-fact, of the deprivation.  <u>Arnold v. Intern. Business Machines</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).  The Ninth Circuit has also explained that merely supplying authorities with a report of criminal activity does not "proximately cause" the resulting arrest, reasoning that the intervening governmental investigation or decision to prosecute is a superceding cause."  <u>Id</u>. at 1356-58. However, because plaintiffs also allege that defendants Coulter and Miyamoto were liable for the "invasive genital examinations," and that these examinations constituted civil rights violations, the court need not reach this issue.

1   Defendants contend that the federal and state claims alleged
2   against Coulter should be dismissed pursuant to Fed. R. Civ. P.
3   12(b)(6).  I cannot agree.

4   Defendants argue that the federal and state claims asserted
5   against Coulter are premised on the theory of respondeat superior,
6   and since a supervisor cannot be liable for an employee's acts
7   under a respondeat superior theory under either state or federal
8   law, the complaint must be dismissed for failure to state a claim.
9   Mot. at 5-6.  Defendants additionally argue that the state law
10  claims should be dismissed against Coulter because as a "public
11  employee," he is not liable for an injury caused by another person
12  under California Government Code § 820.8.[7]   Id. at 9-10.
13  Defendants' arguments are unavailing.

14  Under state and federal law, supervisors may be liable if they
15  are sufficiently involved in the constitutional deprivation.  The
16  Ninth Circuit has instructed that, as to § 1983 claims, a
17  supervisor may be liable if there is "personal involvement in the
18  constitutional deprivation" or if there is a "sufficient causal
19  connection between the supervisor's wrongful conduct and the
20  constitutional violation."  Jeffers v. Gomez, 267 F.3d 895, 915
21  (9th Cir. 2001) (internal quotations and citation omitted).  As for

---

23  [7] California Government Code § 820.8 states:

24  Except as otherwise provided by statute, a public employee is not
    liable for an injury caused by the act or omission of another
25  person. Nothing in this section exonerates a public employee from
    liability for injury proximately caused by his own negligent or
26  wrongful act or omission.

1  the state law claims, although California Government Code § 820.8

2  precludes supervisors from being liable for the acts of their

3  subordinates, see Milton v. Nelson, 527 F.2d 1158, 1159 (9th Cir.

4  1975), a supervisor can still be liable for injuries "proximately

5  caused by his own negligent or wrongful act or omission." See also

6  Michel v. Smith, 188 Cal. 199, 201 (1922)(public employee liable

7  for acts of others if "he has directed such acts to be done or has

8  personally co-operated therein").

9      Here, plaintiffs have properly pled a claim against Coulter

10  where they allege that "defendant Miyamoto was under the

11  supervision and control of defendant James Patrick Coulter, M.D,

12  who approved and ratified her misconduct." FAC at ¶ 18. Plaintiffs

13  also aver that "employees of the defendant UC Regents" - including

14  Coulter - "subjected plaintiffs Roe-One and Roe-Two to invasive

15  genital examinations." FAC at ¶ 14. Plaintiffs allege that

16  Coulter is liable for his own actions - specifically, that he

17  "approved and ratified" Miyamoto's conduct. The court also reads

18  the complaint as alleging a "custom and practice" on the part

19  defendants of subjecting minor children to "strip searches and

20  invasive genital examinations...regardless of whether or not there

21  was probable cause." FAC at ¶ 18. Because supervisors may be

22  liable in their individual capacity for their "own culpable action

23  or inaction in the training, supervision, or control of [his]

24  subordinates, for [his] acquiescence in the constitutional

25  deprivations," Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th

26  Cir. 2005)(citation omitted), the claims against Coulter must be

1  sustained.

2     Construing the facts in the complaint favorably to the

3  plaintiffs, as this court must, it is reasonable to infer that

4  Coulter's liability is based on more than the fact that he was

5  Miyamoto's supervisor.  Rather, because plaintiffs' allegations

6  give rise to inferences that Coulter was liable for the training,

7  supervision, or control of Miyamoto, and because plaintiffs have

8  alleged a custom of "invasive examinations" which Coulter was

9  likely aware of, defendants' motion to dismiss as to Coulter must

10 be DENIED.

11     **b. Defendant Miyamoto**

12     Defendants contend that plaintiffs' federal and state causes

13 of action against Miyamoto must be dismissed because she is immune

14 under state law.  Below, I explain why the federal claims must be

15 sustained, but why Miyamoto is immune from the state law claims.

16        **i. Federal Law Claims**

17     Defendants assert the federal claims against Miyamoto should

18 be dismissed as a result of California state law immunities -

19 specifically under California Penal Code § 11172 and California

20 Government Code § 820.4.  Mot. at 6-9.  Defendants concede that

21 "state statutory immunities generally cannot protect a defendant

22 against a federal civil rights claim," but nevertheless urge this

23 court to adopt the reasoning set forth in <u>Thomas v. Chadwick</u>, 224

24 Cal.App.3d 813 (1990).  Mot. at 8.  This court declines to do so

25 for the reasons stated below.

26     First, the Ninth Circuit has reversed a district court that

12

1   "applied statutory immunities for child abuse investigations to the

2   federal constitutional claims and concluded that the City is immune

3   from a § 1983 action under a state immunity statute." Wallis v.

4   Spencer, 202 F.3d 1126, 1144 (9th Cir. 1999)(citing Martinez v.

5   California, 444 U.S. 277, 284, n.8 (1980)("Conduct by persons

6   acting under color of state law which is wrongful under 42 U.S.C.

7   § 1983. . . cannot be immunized by state law.") and Good v. Dauphin

8   County Social Serv., 891 F.2d 1087, 1090-91 (3d Cir. 1989)(state

9   laws providing immunity from suit for child abuse investigators

10  have no application to suits under § 1983)). In reversing the trial

11  court, the Ninth Circuit explicitly stated that "[i]mmunity under

12  § 1983 is governed by federal law; state law cannot provide

13  immunity from suit for federal civil rights violations." Wallis,

14  202 F.3d at 1144. Although it is unclear from the court's opinion

15  in Wallis which state statutory immunities were at issue in the

16  child abuse investigations, this court is bound by the Ninth

17  Circuit, and in the face of such explicit admonition, this court

18  cannot dismiss the federal claims against Miyamoto based on state

19  law.

20       While this court is mindful of the California appellate

21  court's reasoning in Chadwick, until Congress explicitly states

22  that a state statute may provide immunity for § 1983 claims, the

23  court declines to follow Chadwick because it contravenes Ninth

24  Circuit authority. See Wallis, 202 F.3d at 1144; see also Kimes

25  v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996)("Conduct by persons

26  acting under color of state law which is wrongful under 42 U.S.C.

1 § 1983 or § 1985(3) cannot be immunized by state law.").

2 Furthermore, allowing a state immunity statute to bar claims under

3 federal laws would violate the Supremacy Clause, which prevents a

4 state from immunizing entities or individuals alleged to have

5 violated federal law.  Were it otherwise, "a state legislature

6 would be able to frustrate the objectives of a federal statute."

7 Wade v. City of Pittsburg, 765 F.2d 405, 407-408 (3d Cir. 1985)

8 (citations omitted).

9         Thus, even assuming that its terms are applicable to the

10 instant case, neither California Codes cited by defendants can

11 immunize Coulter from liability resulting from a violation of

12 federal law.  Accordingly, defendants' motion to dismiss the

13 federal claims against Miyamoto must be DENIED.

14                  **ii. State Law Claims**

15         Defendants argue that California's mandated reporting scheme

16 provides absolute immunity for Miyamoto. Mot. at 6-8. Defendants'

17 argument finds support in the relevant statutes and authorities.

18         Under California Penal Code § 11166(a), a mandated reporter

19 is required to make a report to child protective agency:

20         whenever the mandated reporter, in his or her
           professional capacity or within the scope of his or her
21         employment, has knowledge of or observes a child whom
           the mandated reporter knows or reasonably suspects has
22         been the victim of child abuse or neglect

23 Failure to make a report is a misdemeanor.  Cal. Pen. Code §

24 11166(c).  Miyamoto, as a registered nurse, is a mandated reporter

25

26

                           14

under California Penal Code § 11165.7(a)(21).[8]   Penal Code §

11172(a) provides absolute immunity for mandated reporters and

provides that:

> No mandated reporter shall be civilly or criminally liable for any report required or authorized by this article, and this immunity shall apply even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment.

The privilege "encompasses not only the actual act of reporting,

but also 'conduct giving rise to the obligation to report, such as

the collection of data, or the observation, examination, or

treatment of the suspected victim or perpetrator of child abuse,

performed in a professional capacity or within the scope of

employment. . . .'"   McMartin v. Children's Institute

International, 212 Cal.App.3d 1393, 1401 (1989) (quoting Krikorian

v. Barry, 196 Cal.App.3d 1211, 1223 (1987)).

As alleged in the complaint, Miyamoto's actions fall squarely

within the conduct protected by the privilege.  Although plaintiffs

allege that the initial report of child abuse was made by the

children's teacher, prompting CPS to place the minors into

protective custody, FAC at ¶ 15, Miyamoto's actions, in conducting

the examination, were also part of the reporting function and

directly led to the dependency proceedings. Id. at ¶¶ 16, 18.  The

---

[8] Under Penal Code § 11165.7, physicians, licensed nurses and other specified health care workers are "mandated reporters" with a duty to report reasonable suspicions of child abuse or neglect, but only when discovered in the context of their "professional capacity or within the scope of [their] employment."

1  California courts have interpreted § 11172 broadly to cover

2  professionals who were hired to determine whether, in fact,

3  children had been sexually abused.  See Ferraro v. Chadwick, 221

4  Cal.App.3d 86, 92 (1990) (immunity for "activity after the report

5  of suspected child abuse"); McMartin, 212 Cal.App.3d at 1398-1399

6  (immunity for institute retained "to interview, examine,

7  interrogate and evaluate the alleged victims of child abuse" for

8  criminal prosecution).  In Krikorian v. Barry, 196 Cal.App.3d 1211,

9  1223 (Cal.App.2.Dist. 1987), the court explained that "[i]t strains

10 credulity to suggest that the [California] Legislature intended

11 that immunity be granted for the act of reporting but not for the

12 rendering of professional services resulting in the identification

13 of a suspected case of child abuse.  Where, as here, Miyamoto

14 "rendered professional services resulting in the

15 identification...of child abuse," she is immune from suit under §

16 11172.[9]

17     Plaintiffs additionally contend that "no knowledge or

18 reasonable suspicion existed for believing the children had been

19 subjected to sexual abuse," and therefore, Miyamoto is not entitled

20 to immunity.  Opp'n at  13.  California courts, however, have

21

22     [9] Plaintiffs argue that Miyamoto should not be entitled to
   immunity under Calabreta v. Floyd, 189 F.3d 808 (9th Cir. 1999).

23 There, the Ninth Circuit affirmed this court's holding that a
   social worker was not entitled to qualified immunity for
   quasi-prosecutorial discretionary functions where, accompanied by

24 a police officer, she entered the home of plaintiffs without their
   consent.  That case, however, is inapposite.  In the instant case,

25 Miyamoto is not performing any discretionary quasi-prosecutorial
   function.  Rather, she physically examined the minors pursuant to

26 a CPS request.

1  "soundly rejected the argument that immunity does not attach unless

2  'reasonable suspicion' existed."   See Stecks v. Young, 38

3  Cal.App.4th 365, 373 (1996).   It is also firmly established that

4  the immunity conferred by § 11172 is absolute.   See, e.g. Robbins

5  v. Hamburger Home for Girls, 32 Cal.App.4th 671, 679 (1995); James

6  W. v. Superior Court, 17 Cal.App.4th 246, 254; Ferraro, 221

7  Cal.App.3d at 91; see also McMartin, 212 Cal.App.3d at 1400 (§

8  11172 immunity covers false reports made "with the intent to vex,

9  annoy, or harass an innocent party").   Whether or not Miyamoto had

10  reasonable suspicion to believe there was child abuse, therefore,

11  does not preclude her immunity from suit under § 11172.   For the

12  reasons set forth above, defendants' motion to dismiss the state

13  law claims against Miyamoto must be GRANTED.[10]

14  **C. MOTION TO STRIKE**

15    Defendants move to strike various portions of the complaint.

16  The court addresses defendants' arguments below.

17      **a. Injunctive Relief**

18    Defendants urge this court to strike plaintiffs' request for

19  injunctive relief, claiming that plaintiffs have not alleged

20  sufficient facts which require injunctive relief. Mot. at 12; see

21  FAC at ¶¶ 30, 38, 46, 55, 63.   I cannot agree. First, "[t]he

22  district court has considerable discretion to fashion appropriate

23  injunctive relief, particularly where the public interest is

24

25      [10] Since the court concludes that Miyamoto is immune under
California Penal Code § 11172, there is no need to address
26  defendant's argument that she is immune under California Government
Code § 820.4.

1  involved." See United States v. Akers, 785 F.2d 814, 823 (9th Cir.

2  1986); see also Fed.R.Civ.P. 54(c) ("[E]very final judgment shall

3  grant the relief to which the party in whose favor it is rendered

4  is entitled, even if the party has not demanded such relief in the

5  party's pleadings."). Secondly,"[i]njunctive relief is appropriate

6  in cases involving challenges to government policies resulting in

7  a pattern of constitutional violations." Walters v. Reno, 145 F.3d

8  1032, 1048 (9th Cir. 1998).

9      Plaintiffs' allegations are sufficient for this court to

10 conclude that their prayer for injunctive relief is appropriate,

11 especially where Miyamoto allegedly testified that she routinely

12 conducted genital examinations of every child referred to her by

13 CPS, regardless of whether she had probable cause to believe sexual

14 abuse occurred.  FAC at ¶ 18.  If this court finds that defendants'

15 actions  are  unconstitutional,  plaintiffs  will  have  challenged

16 "government policies" which result "in a pattern of constitutional

17 violations,"  and  an  injunction  would  be  appropriate  to  prevent

18 further constitutional violations.[11] Walters, supra.  The motion to

19 ─────────────

20      [11]  On  August  11,  2006,  after  oral  argument,  defendants'
   counsel sent an ex parte letter to this court regarding their

21 motion to strike plaintiffs' allegations "requesting injunctive
   relief against future repetition of defendants' actions."   The

22 court shall file this letter on the docket accordingly.  In that
   letter, defendants contend that Miyamoto's actions were done "in

23 strict adherence to and, under the circumstances, mandated by a
   protocol issued by the State of California Governor's Office of

24 Emergency  Services..."   Defendants  attach  with  their  letter  a
   document  which  purportedly  sets  forth  this  protocol  entitled,

25 "California  Medical  Protocol  for  Examination  of  Child  Physical
   Abuse and Neglect Victims."  Defendants argue that "plaintiffs'

26 apparently viable claim for injunctive relief" would "conflict with
   the  continued  future  operation  of  the  state's  child  abuse

1  strike these allegations must be DENIED.

2      **b. Declaratory Relief**

3      Defendants further contend that plaintiffs have made no

4  allegations regarding the existence of an "actual controversy" for

5  which the court can declare the rights of the parties, and that,

6  therefore, the request for declaratory relief should be stricken.

7  Mot. at 12-13; see 28 U.S.C. § 2201(a); Prayer for Relief at ¶ 5.

8  Defendants' argument is unavailing.  The complaint does allege that

9  an "actual controversy" exists since it states that defendants were

10 aware of Miyamoto's allegedly unconstitutional actions, and

11 approved and ratified such actions.  Indeed, this court may provide

12 appropriate relief by declaring defendants' actions

13 unconstitutional, and may enjoin them from such actions.  Or, this

14 court may declare that defendants' actions were not violative of

15 the Constitution.  In any event, it is clear the complaint

16 sufficiently alleges facts which suggest that declaratory relief

17 may be appropriate.  Therefore, defendants' motion to strike

18 plaintiffs' prayer for declaratory judgment is DENIED.

19     **c. Class Certification**

20     Defendants moves to strike plaintiffs' allegation that a class

21 action lawsuit might be appropriate.  Mot. at 13; FAC at ¶ 13.

22 Although plaintiff has not formally moved for class certification

23 _____

24 detection."  Defendants request that the state be provided notice
   of these proceedings so that they may determine whether or not they
25 wish to act to protect their interests in these proceedings.
   The defendants are referred to Local Rule 24-132 for the proper
26 procedure to follow.

1   by filing a motion, defendants claim that plaintiff's allegations

2   are insufficient to meet the numerosity requirement of Rule

3   23(a)(1) of the Federal Rules of Civil Procedure.  Mot. at 13-14.

4        Generally, defendants can attack the merits of a proposed

5   class's claim in a motion to dismiss even before the plaintiff

6   moves for class certification. 10 Judge William W. Schwarzer et

7   al., California Practice Guide: Federal Civil Procedure Before

8   Trial, § 770, at 10-115 (The Rutter Group 2005). If defendants

9   choose to attack a proposed class' ability to meet the

10  prerequisites of Fed. R. Civ. P. 23(a) or (b), however, defendants

11  should do so by opposing the plaintiff's motion for class

12  certification. Id. ¶ 10:771, at 10-115.  Defendants' arguments

13  relate to the class' ability to satisfy the prerequisites of Rule

14  23(a) and is not proper in a motion to dismiss and should be made

15  in an opposition to plaintiffs'  motion for certification.  Id.

16  See, e.g. Briggs v. Aldi, Inc., 218 F.Supp.2d 1260, 1265 (D.Kan.

17  2002)(the appropriate time to address whether a plaintiff has met

18  the requirements necessary to maintain a class action is after the

19  plaintiff has filed a motion for class certification).  In the

20  absence of any authority from defendants suggesting that the court

21  should consider the merits of certification issues at the 12(b)(6)

22  dismissal stage, the court declines to do so.  The motion to strike

23  is DENIED.

24       **d. Attorney's Fees**

25       Plaintiffs request compensatory damages for attorney's fees

26  "incurred as a consequence of defendants' illegal acts prior to the

20

1   filing of this lawsuit." FAC at 11.  It appears plaintiffs are

2   requesting fees as a result of litigating the juvenile dependency

3   hearing allegedly instituted as a result of defendants actions.

4   FAC at ¶ 18.  Defendants move to strike this prayer for relief on

5   two grounds.  First, defendants contend that plaintiffs cannot

6   prove Miyamoto lacked probable cause in examining the children.

7   Mot. To Dismiss at 14; see Engel v. CBS, Inc., 981 F.2d 1076, 1079

8   (9th Cir. 1992).  Second, defendants argue that based on the state

9   law immunities discussed above, they are not liable as a matter of

10  law.  Id. at 14-15.

11      Defendants' arguments miss the mark.  Whether Miyamoto lacked

12  probable cause to examine plaintiffs are questions of fact to be

13  determined at trial.  Secondly, as discussed above, the state law

14  immunities discussed above bar the state law claims, but are not

15  dispositive as to the federal claims.  In sum, if at trial

16  defendants are liable for violating plaintiffs' civil rights,

17  plaintiffs would be entitled to recover for damages that resulted

18  from the unconstitutional actions, including the costs of

19  litigating the state dependency hearing.  The motion to strike

20  plaintiffs' request for "compensatory damages....for plaintiffs'

21  legal fees and costs incurred as a consequence of defendants'

22  illegal acts prior to filing this lawsuit" must be DENIED.[12]

23  _____

24      [12] Defendants move in the alternative for an order requiring
    plaintiff to provide a more definite statement pursuant to Fed. R.
    Civ. P. 12(e) with regard to the request for injunctive and
25  declaratory relief, class certification, and attorneys' fees.  See
    Mot. at 12-15.  The allegations in the complaint, however, satisfy
26  Rule 8's requirement of "a short and plain statement of the claim

1     **e. Punitive Damages**

2     Defendants request that various portions of plaintiffs'

3  complaint requesting punitive damages from defendant UC Regents be

4  stricken.  FAC at ¶¶ 29, 37, 45, 54, 62; Prayer for Relief at ¶ 3.

5  Since this court has ruled that it lacks subject matter

6  jurisdiction over the UC Regents, and because the UC Regents will

7  be dismissed from suit, the court need not strike any allegations

8  relating to damages, including punitive damages, due to actions on

9  the part of the UC Regents.

10     **6. Prayer For Relief**

11     Defendant finally contends that ¶ 3 of the Prayer of Relief

12  should be stricken.  There, plaintiffs seek punitive damages

13  against all defendants "because of the violation of important

14  public policies protecting persons from housing discrimination

15  because of disability or source of income".  Plaintiffs admit that

16  this was a typographical error, as a template from a previous case

17  had been used to generate the complaint in this case.  Opp'n at 16.

18  Plaintiffs' request to amend their complaint to change the sentence

19  to instead read "and/or because of important public policies

20  protecting persons from the violation of their civil rights" is

21  GRANTED.

22

23                               **IV.**

24

25  showing that the pleader is entitled to relief" and adequately

26  gives defendants notice of plaintiffs' requested relief.  The
     motion for a more definite statement is accordingly DENIED.

1                              **CONCLUSION**

2        Defendants' motions are GRANTED in part, and DENIED in part

3   as follows:

4        1.  The  motion  to  dismiss  for  lack  of  subject  matter

5   jurisdiction as to defendant UC Regents is GRANTED.

6        2. The motion to dismiss counts four and five as to Miyamoto

7   is GRANTED.

8        3.  All other motions are DENIED.[13]

9        IT IS SO ORDERED.

10       DATED: August 28, 2006.

11

12

13                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
14                              UNITED STATES DISTRICT COURT

15

16

17

18   _____

19       [13]  Defendants also request in the alternative that the court
     order plaintiffs, pursuant to Rule 12(e) of the Federal Rules of
20   Civil Procedure, to present a more definite statement as to the
     basis of Coulter's liability. Mot. To Dismiss  at 6.  A Rule 12(e)
21   motion should only be granted when a pleading "is so vague or
     ambiguous that a party cannot reasonably be required to frame a
22   responsive pleading."  CMAX, Inc. v. Hall, 290 F.2d 736, 738 (9th
     Cir. 1961).  The motion attacks unintelligibility, not a lack of
23   detail. Feezor v. Bel Air Mart, 2004 WL 3619126, *1 (E.D. Cal.
     2004) (Karlton, J.) (citing Resolution Trust Corp. v. Dean, 854
24   F.Supp 626, 649 (D. Ariz. 1994)).  Because, as explained above,
     plaintiffs' complaint satisfies Rule 8's requirement of "a short
25   and plain statement of the claim showing that the pleader is
     entitled to relief" and puts Coulter on notice of what his alleged
26   basis of liability is, the motion for a more definite statement
     must be DENIED.

                                    23