UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN DOE, et al.,

                              NO. CIV. S-06-1043 LKK/DAD

    Plaintiff,

  v.

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA, et al.,

    Defendants.

                               /

    This case was brought by minor plaintiffs and their guardians for allegedly improper actions by the defendants, which led to the minors' removal from the home. Specifically, plaintiffs allege that defendants violated the minor children's Fourth Amendment rights by subjecting them to a nonconsensual physical examination and consequently violated their parents' Fourteenth Amendment rights of familial association. Pending before the court is defendants' motion in limine number three. The court resolves the motion on the papers and after oral argument.

////

1

## I. BACKGROUND AND FACTS[1]

The case concerns the removal of the plaintiff children from their parents pursuant to actions taken by Child Protective Services. On May 11, 2004, a social worker went to the plaintiffs' home after the agency had received information of the possibility of child abuse. The case worker requested that the mother, Jane Roe, bring the children to the University of California, Davis Medical Center office, so that they could receive a medical exam. Plaintiff Jane Roe disputes that she fully understood the case worker's requests, as she is a native Vietnamese speaker with little understanding of English. Nevertheless, Jane Roe and her children went to the CAARE facility and were met there by the case worker.

At the medical center, defendant Miyamoto performed a medical exam of the plaintiff children. The parties dispute whether Jane Roe understood English well enough to give her lawful consent. It is undisputed that Jane Roe did not sign consent documents for the physical examinations, nor was she asked to do so. The CPS case worker informed defendant Miyamoto that Jane Roe had consented to the exams, and Miyamoto then performed a physical examination of the plaintiff children. After the exam, Miyamoto communicated to the case worker that she was concerned about possible traumatic injury to the genital areas of the girls. As a result, CPS took all of the children into custody that day. The plaintiffs also report

---

[1] Unless otherwise specified, the facts described herein are taken from the court's April 8, 2008 order.

2

1  that on May 13, 2004, the plaintiff girls were subject to a more
2  extensive gynecological exam, a colposcopy.
3      A juvenile detention hearing occurred on May 17, 2004, at
4  which time the children were released into the custody of their
5  parents because the hearing had not been timely held. Def.'s. Mot.
6  in Limine #3, at 3. A few days later, the County of Sacramento
7  refiled a dependancy petition, based on photos taken at the May 11,
8  2004 and the May 13, 2004 exams. Id. The children were taken back
9  into the custody of the County. Id. On June 2, 2004, another
10 juvenile detention hearing was held. Id. The minor children were
11 represented by an attorney from Sacramento Child Advocates and the
12 adult plaintiffs were each represented by separate counsel.
13 Declaration of Robert Tyler in Support of Defendant's Motion in
14 Limine ("Tyler Decl.") Ex. A (transcript of juvenile detention
15 hearing). Counsel for all parties were given the opportunity to be
16 heard. Id. Counsel for the County's Department of Health and Human
17 Services and for the minor children both recommended the children
18 be detained on the basis of the May 13, 2004 colposcopy. Id. at 3-
19 5. Counsel for the parents opposed the detention for a variety of
20 reasons, including the sufficiency of the evidence of abuse and
21 procedural irregularities in the hearing. See id. at 6, 11
22 (father's and mother's counsel both raise the question of whether
23 refiling the petition for detention was proper). Counsel for the
24 father raised, albeit obliquely, the plaintiffs' allegation that
25 the initial examination was conducted without parental consent. Id.
26 at 9. The court granted the petition for detention. Id. at 16.

**II. ANALYSIS**

Defendants Miyamoto and Lopez move to exclude evidence of the detention of the plaintiff minor children after the June 2, 2004 hearing. Plaintiffs oppose on the grounds that evidence of the continued detention is relevant to the parents' claim for emotional distress. The court grants the motion.

Defendants direct the court to other cases brought under 42 U.S.C. § 1983 for violation of Fourth Amendment rights in which courts have held that the defendant could not be liable for damages arising after the intervening actions of a third party. See Alvarez-Machain v. United States, 331 F.3d 604, 636 (9th Cir. 2003) rev'd on other grounds by Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) (claim for false arrest); see also Heck v. Humphrey, 512 U.S. 477, 484 (1994) (on false arrest claim, "'damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.'" (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on the Law of Torts 888 (5th ed. 1984))); Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) (in claim for false arrest, prosecutors independent judgment that probable cause existed broke the chain of causation as to the officers). These cases are not particularly helpful to the instant case, however. In the context of a claim for false arrest or malicious prosecution, plaintiff's injury stems from a state actor's use of false evidence or other pressure to obtain the arrest or investigation of the plaintiff. As such, an independent party's review of the evidence and determination that probable

4

cause in fact exists has operated as a check on the misconduct, and therefore breaks the chain of causation for § 1983 purposes. That scenario is not applicable here. Here, the plaintiffs do not complain that the results of the May 11, 2004 exam were falsified or in any other way call into question the veracity of the evidence relied on by the Juvenile Court in ruling on the juvenile detention petition. For this reason, the mere fact that the Juvenile Court made an independent determination could not alone have cured the injury of which plaintiffs complain, in the same way that a preliminary hearing cures an allegedly false arrest. Instead, the court must consider whether evidence that was allegedly unlawfully obtained can be considered the proximate cause of the minor plaintiffs' detention after the June 2, 2004 hearing, where the Juvenile Court apparently relied on that evidence (or relied on evidence that derived from evidence obtained in the May 11, 2004 exam).

In Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999), the Second Circuit held in a comparable situation that damages under § 1983 for a wrongful search did not extend to the plaintiff's later detention. There, the plaintiff presented evidence that the City of New York had a policy of searching occupants of taxicabs as a matter of course. Townes, 176 F.3d at 142. The plaintiff was searched after his taxi was stopped by police officers. Id. Based on the search, he was charged with possession of a weapon and a controlled substance. Id. At hearing his motion to suppress was denied, and he subsequently entered a

5

guilty plea. Id. He then sued both the officers and the City under § 1983 for violation of his Fourth Amendment rights. Id.

On appeal, the Second Circuit considered whether the plaintiff was entitled to present evidence of his conviction and incarceration, as proof of his damages by the individual officers. Id. at 145. The court first held that the "fruit of the poisonous tree" doctrine would not justify presentation of this evidence, as it is strictly an evidentiary rule in criminal cases and does not extend to § 1983 analysis. Id. This is largely due to the fact that the exclusionary rule operates as a deterrent to police misconduct, whereas the purpose of § 1983 is compensation for wrongs done to the plaintiff. Id. at 146. Were the fruit of the poisonous tree doctrine applied to § 1983 actions, this "would impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation." Id.

Moreover, the court concluded that the improper search was not the proximate cause of the plaintiff's conviction and incarceration because the judge had independently denied the motion to suppress. Id. This operated as an "intervening and superceding cause" of the plaintiff's conviction, although the search was a but-for cause of the plaintiff's eventual conviction and incarceration. Id. The court reasoned,

> The state trial court, which alone had the power to suppress the improperly obtained evidence, had control over the ultimate outcome of Townes's case. That court should have recognized that the defendants violated Townes's clearly established Fourth Amendment rights, and should have suppressed the evidence under the fruit of the poisonous tree doctrine, as the Appellate

6

> Division later ruled. The state trial court's exercise of independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability for the plaintiff's conviction and incarceration.

Id. at 147.

Here, the situation is comparable to, although not as straightforward as, that confronted by the Townes court. At the June 2, 2004 hearing, the County apparently presented evidence of the hospital staff's medical review of the May 13, 2004 exam, which followed the exam upon which plaintiffs' suit is based. Tyler Decl. Ex. A at 3. The court granted the petition for detention.

It appears from the transcript of the Juvenile Proceedings that the plaintiffs did not challenge the admission of evidence from the May 13, 2004 exam on the basis that it ultimately derived from the results of the allegedly unlawful May 11, 2004 exam. Importantly, however, plaintiffs had the opportunity to do so. The plaintiffs John Doe and Jane Roe (the parents of the minor children) were represented by counsel at the June 2, 2004 hearing and raised several challenges to the County's petition for detention. Because the petition was contested, all rules of the California Evidence Code applied. Cal. Rule of Court 5.684. Plaintiffs have tendered no evidence that the court would not have entertained an objection to the evidence on the grounds that it derived from other, unlawfully obtained evidence nor does the transcript of the proceeding so indicate. Although the Juvenile Court did not make an independent judgment on the lawfulness of the May 11, 2004 exam, plaintiffs' failure to raise the issue denied

7

1  the court of that opportunity. In this sense, the defendants cannot
2  be considered to have "caused" the injuries following the June 2,
3  2004 hearing, as it was plaintiffs' inaction that prevented the
4  Juvenile Court from reviewing and perhaps excluding this evidence.
5     Moreover, there was other evidence tendered to the Juvenile
6  Court of the abuse, on which the court may have relied in reaching
7  its decision. Counsel for the minor children urged the court grant
8  the detention petition because, in addition to the results from the
9  May 13, 2004 exam, two of the minor children's responses to
10 questioning were "suspicious." Tyler Decl. Ex. A at 14. Because the
11 court may have relied on this evidence in reaching its conclusion,
12 this militates towards finding that the May 11, 2004 exam was not
13 the proximate cause of the minor plaintiffs' detention after June
14 2, 2004.

### III. CONCLUSION

16 Accordingly, the court GRANTS defendants' motion in limine
17 number 3.
18    IT IS SO ORDERED.
19    DATED: November 6, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

8